ETHRIDGE, Chief Justice.
George E. Bishop, plaintiff-appel-lee, brought this action in the Circuit Court of Wayne County against Union Oil Company, defendant-appellant, seeking damages in contract for surface injuries to his land resulting from Union’s drilling a producing oil well on it. The jury returned a verdict for Bishop for $10,000, but the court ordered a new trial unless Bishop accepted a remittitur of $3,625, thus reducing the judgment to $6,375. Bishop unconditionally accepted this remittitur and is bound by his acceptance. Five-Two Taxi Service, Inc., v. Simmons, 241 Miss. 182, 129 So.2d 401 (1961); Thomas v. Fleming, 241 Miss. 26, 128 So.2d 854 (1961). Hence his cross-appeal on that issue has no merit. On the direct appeal by Union there are two principal issues: (1) interpretation of a clause in an oil, gas and mineral lease prohibiting drilling a well within 200 feet of lessor’s residence or barn without lessor’s consent; and if that clause is applicable, (2) whether the measure of damages under the instant facts may properly be the cost of restoration of the land within 200 feet of plaintiff’s barn. We hold that the 200 foot clause in the lease applies and that cost of restoration may be the measure of damages. The judgment is affirmed.
In 1965, a ten-acre tract farmed and occupied as a residence by Bishop was placed under an oil, gas and mineral lease by the mineral owners, who included Bishop. After granting to the lessee the right to drill an oil well on the leased premises, the lease recited:
* * * [N]o well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor’s consent. Lessee shall be responsible for all damages caused by Lessee’s operations hereunder other than damages necessarily caused by the exercise of rights herein granted.
*436 In late 1967, Union, as assignee of this lease, informed Bishop that it planned to drill a well on his property. The first location selected by company geologists from a subsurface map showing no topographical features fell between Bishop’s house and his barns. Union found this location unacceptable and staked a second location approximately 330 feet to the north or northwest of the first. This site too proved to be unacceptable owing to its proximity to a gully, which would have provided inadequate footing for the heavy rig. Therefore, Union selected a third location, the one actually drilled, in the center of a pasture approximately 125 feet east of the second.
The well, situated on the third location, was drilled within 160 feet of Bishop’s barns, in violation of the covenant quoted above. A bank of storage tanks and a substantial portion of the large reserve pit, both adjuncts to the well, were located within the prohibited area. Beginning approximately 37 feet north of Bishop’s barn. Union graded about six feet below its original level and gravelled an area 175 by 275 feet for use as a “turnaround,” destroying in the process a large part of a pasture and a number of trees shading Bishop’s pasture and barns. The cost of restoring this damage in the area within 200 feet of the barns was estimated by a contractor testifying for Bishop at $6,375.
Appellant contends that all rights granted under its oil, gas and mineral lease could be exercised within 200 feet of the barn, except the actual drilling' within the 200-foot area; and thus it had the right to use all of the area within 200 feet of the barn, with the only limitation being that appellant could not locate its well bore within that area. However, the 200-foot clause does not evince such a limited purpose. The lease having been prepared by lessee should be construed most strictly against it. The prohibition against a well being “drilled” within 200 feet of a barn provides more than simple placement of the well bore in that location. It proscribes the well bore and all other operations necessarily related to drilling, which would include tanks, turnaround, grading, and pits.
In Smith-Horton Drilling Co. v. Brooks, 199 Okl. 63, 182 P.2d 499 (1947), the lessee drilled an oil well and dug a slush pit within the restricted area, which prevented lessor’s using a trench silo for the processing and preserving of growing corn intended as feed for cattle in the form of silage. Affirming a judgment for damages, the Court held:
It is conceded that the parties to the lease contemplated damages to the house or barn. The use of the words “house or barn” in the restrictive provision was for the purpose of defining the area. We think any damage that might reasonably result directly from a violation of the terms of the lease in this regard, and subject to definite proof, was within the contemplation of the parties.
The defendant knew, or should have known, the existence and location of the silo. It is common knowledge that a silo is used for only one purpose, towit, the processing and preservation of silage and that growing crops are used in the making of silage. It was to be reasonably expected by the defendant that an interference with the use of the silo might result, as in this case, under the evidence, in inability to use the crop as intended. We think the damage here complained of was reasonably within the contemplation of the parties to the contract. Such damages, though special, are recoverable if alleged and definitely proven. (182 P.2d at 502)
In short, the drilling distance clause was for the purpose of defining the prohibited or restricted area within which a well and its adjuncts could not be located without lessor’s consent. See 1 H. Williams & C. Myers, Oil and Gas Law § 218.11, at 237 (1964); 4 W. Summers, Oil and Gas § 652, at 45 n. 45 (1962). One writer has referred to the 200-foot clause as a “familiar *437 provision controlling surface use,” and observed, “Apparently the drilling distance provision causes little difficulty and requested exceptions are not common.” Scott, Oil and Gas Lease Clauses Relating to Surface Damage and Use of the Surface, 13 Rocky Mountain Mineral Law Institute 317, 348-350 (1967).
Union endeavored to establish an estoppel with testimony that Bishop was present when the third and final location was staked, or otherwise knew of it, and failed to object. The circuit court granted Union an instruction that if the jury believed that Bishop “either through what he said or what he did, consented to the drilling of the well within 200 feet from the barn,” then it was not liable for damages resulting from the well being drilled at that location. This instruction was fashioned from the language of the oil, gas and mineral lease, and afforded the jury an opportunity to evaluate Union’s evidence of Bishop’s knowledge and conduct. On this issue the testimony was conflicting, and the jury was justified in accepting Bishop’s version. In view of the foregoing instruction, it was not reversible error for the court to deny Union another instruction on an estoppel theory. Moreover, the drilling distance clause expressly requires Bishop’s consent to drill within the proscribed area, and Union obtained an instruction submitting that issue. See Hennessy v. Junction Oil & Gas Co., 75 Okl. 220, 182 P. 666 (1919).
The circuit court held that the measure of damages was the cost of restoration of the land within the prohibited area, and gave plaintiff an instruction to that effect. Union, on the other hand, contends that the only damages recoverable for breach of the drilling distance covenant are damages to the barn itself and perhaps special damages connected therewith. We do not agree. The trial court under the particular circumstances of this case was correct in submitting as the measure of damages the cost of restoration. Appellant violated an express covenant not to drill within 200 feet of the barn without lessor’s consent. It agreed to be responsible for all damages caused by its operations. The only exception was damages “necessarily caused by the exercise of rights herein granted,” which exception does not apply to damages within the proscribed area.
In Sun Oil Co. v. Nunnery, 251 Miss. 631, 170 So.2d 24 (1964), the cost of restoration was held to be the proper measure of damages for negligent development of a well location. Williams and Myers, after arguing against implication of a general duty to restore, recognize that the lessee may be thus liable for breach of “an express contractual duty.” 4 H. Williams and C. Myers, Oil and Gas Law § 218.12 (1964). In the instant case, damages reasonably resulting from a violation of the drilling distance clause are within the contemplation of the parties. This includes the duty to pay for the cost of restoration.
Affirmed.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.